# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AMERICA'S SERVICING COMPANY,                     ) | |
| ) | |
| Appellant,                     ) | Case No.: 10-cv-00292-GMN-RJJ |
| vs.                     ) | |
| ) | **ORDER** |
| IRENE MICHELLE SCHWARTZ-TALLARD,                     ) | |
| ) | |
| Appellee.                     ) | |

This is an appeal of a sanctions order issued by the Bankruptcy Court.  The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1).

On March 30, 2007, Appellee, Debtor Irene Michelle Schwartz-Tallard, filed for Chapter 13 bankruptcy in this District.  On February 27, 2009, Appellant, America's Servicing Co., moved for relief from automatic stay with respect to Appellee's real property located at 17 Caprington Road, Henderson, NV (the "Property").  On April 6, 2009, Appellant lifted the automatic stay as to the Property. (App. to Opening Br., Ex. 5, ECF No. 15.)[1]  Appellee moved to reinstate the stay, and the Bankruptcy Court granted the motion orally at a May 13, 2009 hearing. (*See id.*, Ex. 9, at 4:22–23, 5:12, 5:25.) Appellant did not appear at the May 13, 2009 hearing. (*See id.*, Ex. 9, at 3:1–9.) Appellant caused the Property to be sold at a trustee's sale on May 20, 2009. (*Id.*, Ex. 13, at 3:3.)  The Bankruptcy Court entered the order reinstating the stay into the docket on June 3, 2009. (*See id.*, Ex. 10.)

---

[1] Although this was technically an act of the Bankruptcy Court, this order was entered by Appellant. Under Local Rule of Bankruptcy Practice 9021(d), a party may enter an order on its own after filing notice of the motion, if there is no objection.

Appellee filed a motion for sanctions, which was heard on January 7, 2010. At that four-hour evidentiary hearing, Appellee testified that she was current on her payments though March 2009, but that Appellant returned her check for full payment in April 2009. (*See id.*, Ex. 20, at 10–24.) At that time, Appellant sent her a letter indicating that her loan was in foreclosure. (*Id.*, Ex. 20, at 24–25.) After reviewing some records, a representative of Appellant admitted to Appellee on the telephone that Appellant had erred when it began foreclosure proceedings based on allegedly missed January and February 2009 payments that were not, in fact, missed. (*Id.*, Ex. 20, at 25:5–9.) When the Bankruptcy Court reinstated the stay, Appellee sent Appellant the payments for April and May 2009, but Appellant rejected the payment, still asserting the house was in foreclosure status. (*Id.*, Ex. 20, at 26:24–27:22.) Appellant asserted this even though Appellee had enclosed with the payments a letter notifying Appellant of the reinstatement of the stay. (*Id.*, Ex. 20, 27:6–8.) On May 28, 2009, when Appellee's husband and his father arrived at the Property, they saw a notice posted on the garage indicating that the home had been sold and that they would be evicted in three days. (*Id.*, Ex. 20, at 30:10–31:6.) Appellee testified that she "got sick" and "got a panic attack." (*Id.*, Ex. 20, at 31:21.) She already had a prescription for Xanax due to a previous condition of panic attacks, but she had not had to refill the prescription since September 2008 and had not had an attack in the prior six months. (*Id.*, Ex. 20, at 32:25–33:5.) She had to refill the prescription three times between April 2009 and the January 2010 sanctions hearing. (*Id.*, Ex. 20, at 33:6–7.) She had to see her doctor to do this, and she also had trouble sleeping and missed a lot of work. (*Id.*, Ex. 20, at 33:7–12.) Her doctor prescribed a new medication: a sleeping pill, Ativan. (*Id.*, Ex. 20, at 33:17.) Appellee also tripped and injured herself near the courthouse in August 2009 because of her nervous mental state, causing contusions, another panic attack, and missed work. (*Id.*, Ex. 20, at 34:10–35:10.)

Appellee was clearly nervous and upset during her testimony. (*See id.*, Ex. 20, *passim.*) Appellant's husband corroborated her testimony about her nervousness and panic attacks. (*See id.*, Ex. 20, at 98:8–14.)

Beverly DeCaro, an employee of Appellant, testified that in early 2009, Appellee was two months behind on her payments, that the payment made in January 2009 was applied to that owed in December 2008, and that the payment made in March 2009 was applied to that owed in January 2009. (*See id.*, Ex. 20, at 118:5–11.) Another payment made in March 2009 was applied to that owed in February 2009. (*Id.*, Ex. 20, at 118:23–119:2.) On cross-examination, DeCaro admitted that payments had been made for every month from March 2007 to March 2009. (*See id.*, Ex. 20, at 120:24–121:2.) The Bankruptcy Court found that payments were always timely and that the Property was never in default. (*See id.*, Ex. 20, at 151:21–22, 153:16–22.) It was not clear error for the Bankruptcy Court to so find, based on the cross examination of DeCaro. The Bankruptcy Court also found that Appellant was served with the motion to reinstate the automatic stay, and that it would therefore be charged with knowledge of the granting of that motion, even if Appellant did not attend the hearing and hear the oral order. (*See id.*, Ex. 20, 154:9–13.)

The Bankruptcy Court awarded Appellee $80,000 in damages: $40,000 in emotional distress damages, $20,000 in punitive damages, and $20,000 in attorney's fees. (*See* App. to Opening Br., Ex. 20, at 156:9–23, ECF No. 15.) The Court also ordered the Property to be returned because Appellee was not in default when Appellant foreclosed. (*See id.*, Ex. 20, at 151:12–152:6.) The Bankruptcy Court stated that its ruling was based upon a violation of Rule 9011--Appellant had brought its motion for relief from automatic stay in bad faith, knowing that Appellee was current on her payments such that a foreclosure could not lawfully occur:

> I'm ordering sanctions because of the initial motion [for relief from automatic stay] that was filed that was false, a false motion. You violated Rule 9011. Your client violated Rule 9011. You used this outside counsel, you don't look at anything and you don't care.
>
> . . . .
>
> And I want this to send a message. Any more of these on HBSC or Wells Fargo, I'm going to impose even larger sanctions. You've got to start paying attention. None of this "Oh, that's how we do our accounting." You look at it; you say "Was there really a payment made each and every month?" And counsel, you should have done that. Under 9011, there's a certification the motion was brought in good faith. It was your job to look at that accounting and say "Oh, wait a minute, there was a payment made each and every month. Is there a mistake?" You didn't do it.

(*Id.*, Ex. 20, at 155:14–156:4; *see id.*, Ex. 20, at 158:14–21.) The Bankruptcy Court noted that Appellee's previous counsel may have committed malpractice by not opposing the motion for relief from automatic stay as to the Property, but that fact did not shield Appellants from the Rule 9011 consequences of having filed the motion in the first place. (*See id.*, Ex. 20, at 157:17–25.)

Later, the Bankruptcy Court noted that sanctions were appropriate for two reasons: (1) the filing of the factually false motion to lift the automatic stay; and (2) Appellant's failure to return the property even after Appellant discovered the error, (*see id.*, Ex. 20, at 160:22–25), clarifying that sanctions were supported by both Rule 9011 and 11 U.S.C. § 362(k). The Bankruptcy Court further clarified that the emotional damages award was based on emotional and economic harm, such as lost wages, and noted that Appellee had seen a physician and received prescriptions. (*See id.*, Ex. 20, at 162:23–163:13.) In the written order, which incorporates the findings of fact and conclusions of law made at the hearing, the Bankruptcy Court justified the sanctions based both on violations of the automatic stay--i.e., section 362(k)--and on Rule 9011. (*See id.*, Ex. 23.) Thus, if the sanctions can be justified under either section 362(k) or Rule 9011, this Court will uphold

them.

## III. STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are reviewed de novo, and its factual findings are reviewed for clear error. *See Blausey v. U.S. Tr.*, 552 F.3d 1124, 1132 (9th Cir. 2009). The Ninth Circuit applies the same standard of review to the Bankruptcy Court's rulings as the district court does and affords no deference to the district court's appellate rulings. *See In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).

## IV. QUESTIONS PRESENTED

1. When was the automatic stay reinstated?
2. When did Appellant's duty to mitigate damages arise?
3. Did the Bankruptcy Court follow proper procedure in imposing sanctions?
4. Was the award of attorney's fees supportable without a finding of reasonableness?
5. Was the award of emotional distress damages supportable without a finding that the damages would have been suffered by a reasonable person similarly situated?

## V. ANALYSIS

### A. Reinstatement of the Stay

Appellant argues that the stay was reinstated only when the written order was entered onto the docket, not when the bankruptcy judge orally granted the motion to reinstate the stay. Appellant cites to *In re Beatty* for the proposition that "the effective and operative date of an order is the date of entry into the docket." 162 B.R. 853, 857 (B.A.P. 9th Cir. 1994), *overruled on other grounds by Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). The *Beatty* court ruled that because the conversion of a bankruptcy case from Chapter 13 to Chapter 7 constitutes a "judgment" under Bankruptcy Rule 9021 and Civil Rule 58, it is effective only when the order is entered

into the docket. *Id.* Bankruptcy Rules 9001(7) and 9002(5), in turn, define a judgment as any appealable order. A bankruptcy judge has discretion, however, to determine whether her order reinstating a case, and hence an automatic stay, is effective when signed or when entered into the docket. *In re Sewell*, 345 B.R. 174, 179 (B.A.P. 9th Cir. 2006). Presumably, then, a bankruptcy judge also has discretion to determine that her order is immediately effective when spoken. If docketing is not the *sine qua non* of efficacy, a spoken order should be sufficient, because a signed, but yet undocketed order provides no more notice to any party than does an oral order. Whether oral or written, undocketed orders provide actual notice to parties attending a hearing on a motion and constructive notice to parties with notice of the motion who are expected to attend the hearing, but undocketed orders, written or spoken, do not provide constructive notice to the world at large. The *Beatty* court did not confront a situation where a bankruptcy judge declared the effective date of her own order--the opinion is silent on whether the bankruptcy judge in that case had done so--but rather a situation where the effective date had to be determined under a default rule. In *Noli v. Comm'r*, the Ninth Circuit held that a bankruptcy judge's oral order lifting a stay could be immediately effective where the parties were not prejudiced by the lack of a separate judgment on the docket because they had notice of the oral order. 860 F.2d 1521, 1525 (9th Cir. 1988). The *Noli* court noted that the purpose of the "separate docket" requirement of Civil Rule 58 is to clarify when the time for appeal begins to run. *Id.* (citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978)).

Appellant argues that because it only knew about the motion to reinstate the stay, but not about the oral order, it had no notice of it. Appellee responds that the oral order was effective as of the day of the hearing, because: (1) the written order so stated, (*see* App. to Opening Br., Ex. 10, at 2:1, ECF No. 15); and (2) as a matter of law, *see In re*

*Nail*, 195 B.R. 922, 930–32 (Bankr. N.D. Ala. 1996) (holding that its oral order reinstating a stay was immediately effective, because the purpose of the order was to provide immediate relief).  The bankruptcy judge here noted at the sanctions hearing that her oral order was intended to be a "speaking order"-- i.e., immediately effective. (App. to Opening Br., Ex. 20, at 154:4–5, ECF No. 15.)  Appellee notes that the Bankruptcy Court had jurisdiction to interpret its own order.

    *Noli* appears to permit a bankruptcy judge to make her oral orders immediately effective, so long as there is notice.  The bankruptcy judge herself noted at the sanctions hearing that she suspected someone from Appellant's counsel's office was in the courtroom at the stay reinstatement hearing "because it [was] a motion day." (App. to Opening Br., Ex. 20, at 154:3–4, ECF No. 15.)  There appears to be no proof of this, but Appellee argues that even if Appellant had no actual notice until June 3, 2009, when the written order was entered, it continuously violated the stay on every day thereafter until it finally set aside the foreclosure in March 2010.  Appellee need not resort to this argument, however, because Appellant had actual notice of the stay reinstatement.  The critical piece of relevant evidence--and the bankruptcy judge did not commit clear error in crediting it--was Appellee's testimony that she notified Appellant in writing of the reinstatement of the stay on the day after the oral order issued, May 14, 2009:

> [W]hen we were in court I think it was May 13th [(it was)], and Judge Riegle put the stay back on our home.  That next day I sent two separate checks for April and May's payment .
> . . .
>
> *And I also put in with the two checks an explanation that I am sending these two checks for April and May.  We were in court, and the stay was put back on my home.*  And I'm sending these two checks to make up for April and May which you wouldn't accept . . . .
>
> . . . .

> And they sent it back because they said the funds are not certified. "Unfortunately, we can only accept certified funds representing the total amount due on your loan. . . . Your loan is in foreclosure status at this time."

(*Id.*, Ex. 20, at 26:24–27:19 (emphasis added)). This evidence shows that Appellant had actual notice of the reinstatement of the stay no later than May 17, 2009, three days after Appellee mailed notice to Appellee. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship¸* 495 F.3d 1119, 1125–26 (9th Cir. 2007) (citing Fed. R. Civ. P. 6(e) and adopting a three-day presumption for the Ninth Circuit). This was three days before Appellant caused the Property to be sold at the trustee's sale on May 20, 2009. The presumption of receipt of the letter on May 17, 2009 is rebuttable, *see id.*, but Appellant did not provide any evidence to rebut receipt of the letter or the timing of receipt. In fact, Appellee testified that Appellant responded to the letter, (App. to Opening Br., Ex. 20, at 27:13, ECF No. 15), which strongly implies receipt of it. Appellant's cross-examination of Appellee elicited only that Appellee had no copy of the letter, (*see id.*, Ex. 20, at 68:21–24), but Appellee's testimony that she communicated the reinstatement of the stay to Appellant is not hearsay, because it was introduced to prove that the communication was made, not to prove that the stay was in fact reinstated, *see* Fed. R. Evid. 801(c).

The Court finds that the stay was reinstated no later than May 17, 2009 when Appellant received actual notice of the oral order. Because the purpose of the order was to provide immediate relief and the Bankruptcy Court specifically noted in the written order that the oral order was intended to be effective when spoken, the Court finds that the order was immediately effective on May 13, 2009, but, in any case, that Appellant had actual notice of it no later than May 17, 2009.

/ / /

### B.   Mitigation of Damages by Setting Aside the Trustee's Sale

Appellant argues that it had no duty to set aside the foreclosure once it received notice on June 3, 2009, via the published order, that the Bankruptcy Court had reinstated the stay, because until the January 7, 2010 sanctions hearing, there was no determination by the Bankruptcy Court that the sale, which occurred after the oral order but before the written order, violated the stay.  This is not a persuasive argument.  As noted above, Appellant had actual notice of the reinstatement of the stay before the sale, making the mitigation issue moot.  Also, the Bankruptcy Court found that Appellant had knowledge of the hearing.  It was therefore charged with knowledge of the oral order reinstating the stay even if it had no actual knowledge.  At a minimum, Appellant acted with extreme recklessness amounting to willfulness in causing the sale of the Property without inquiring with the Bankruptcy Court or opposing counsel as to the outcome of the stay reinstatement hearing.

Even assuming, however, that an oral order would not be effective to reinstate the stay without Appellant's knowledge, and that Appellant did not have actual notice of the oral order, the only reason the stay was lifted even temporarily was because Appellant filed a motion--which became an order under Local Rule 9021--in violation of Rule 9011. Appellant knew that the Property was not in default when it filed its motion to lift the stay, and but for this false representation to the Bankruptcy Court in violation of Rule 9011, the stay would have been in place when Appellant caused the Property to be sold. Therefore, the order lifting the stay, being based on Appellant's fraud upon the court, was, at least as to Appellant, void *ab initio*,[2] and Appellant not only violated Rule 9011

---

[2] *Cf. Sang Yoon Kim v. Holder*, 603 F.3d 1100, 1104 (9th Cir. 2010) (holding that lawful permanent resident status is void *ab initio* when predicated on fraudulent green cards); *In re Criswell*, 102 F.3d 1411, 1419 (5th Cir. 1997) (holding that a fraudulent transfer is void *ab initio*).

by filing a false motion and order to lift the stay, but also violated the stay itself when it caused the Property to be sold. Permitting Appellant to avoid the consequences of having violated the otherwise valid stay based on its own lifting of the stay via a false motion and subsequent order would be inequitable. Appellant's duty to mitigate damages arose immediately upon the foreclosure sale, because the sale was an immediate violation of the stay.

### C.   Rule 9011 Procedure

Appellant argues that damages were improperly awarded, because under Rule 9011: (1) sanctions must be sought in a separate motion; (2) the Court must issue an order to show cause prior to awarding sanctions or issue an order setting forth the reasons for sanctions; and (3) sanctions must be awarded to the court, not to a party.

Appellant misperceives the sanctions order. Sanctions were supported by both a violation of Rule 9011 and a violation of the stay under 11 U.S.C. § 362(k). (App. to Opening Br., Ex. 23, ECF No. 15.) The violation of the stay alone supports the sanctions order, except as discussed, *infra*. A review of the hearing indicates that the sanctions were based on a violation of the stay. The gravamen of the bankruptcy judge's criticism of Appellant's actions was that Appellant had willfully foreclosed on a Property that was not in default, in callous disregard of Appellee's rights. (*See, e.g.*, App. to Opening Br., Ex. 20, at 151:9–152:2, ECF No. 15.) Appellant's violation of Rule 9011 in filing a false representation to the court making the temporary lift of the stay possible was an integral part of Appellant's violation of the stay, but the sanctions need not be, and were not, supported on the Rule 9011 violation in and of itself. It was thus not necessary for the Bankruptcy Court to follow the strictures of Rule 9011 in awarding sanctions here. The motion before the Bankruptcy Court was titled "Motion for Sanctions for Willful Violation of the Automatic Stay and for Attorney's Fees." (*See id.*, Ex. 11).

The motion itself nowhere mentions Rule 9011, but only § 362.  This Court finds that the Bankruptcy Court did not need to follow the Rule 9011 procedure in imposing sanctions, because they were properly supported under § 362(k).

### D.     Attorney's Fees

Appellant appeals the award of attorney's fees because the Bankruptcy Court made no finding of reasonableness.  Appellant notes that Appellee's counsel never made any oral or written presentation to the Court of why $20,000 was a reasonable amount of attorney's fees.

"[C]osts and attorney's fees" may be awarded under § 362(k)(1).  Under the "American Rule," parties pay their own costs and fees absent a statutory right to have them paid by the opposing party.  Although such statutes often permit only "reasonable" fees, *see, e.g.*, 42 U.S.C. § 1988(b), the statute here does not on its face appear to require any finding of reasonableness, *see* 11 U.S.C. § 362(k)(1).  This is because attorney's fees under § 362(k) are awarded not as attorney's fees as such, but as a measure of actual damages.  In *Sternberg v. Johnston*, the Ninth Circuit ruled that a movant under § 362(k) "can recover as actual damages only those attorney fees related to enforcing the automatic stay and remedying the stay violation . . . ." 595 F.3d 937, 940 (9th Cir. 2010).  The *Sternberg* court did not mention "reasonableness."  In fact, it noted that § 362(k) does not even abrogate the American Rule, because it awards attorney's fees as a measure of actual damages sustained, not "attorney's fees qua attorney's fees." *Id.* at 946.  In other words, reasonableness appears to be inapposite under § 362(k).  Still, because the only damages permitted under the statute are "actual damages," the Bankruptcy Court made an error of law when it simply made an estimation of $20,000 without examining actual costs and fees expended and/or charged.  The Court therefore reverses the Bankruptcy Court's ruling as to attorney's fees and remands for a determination of actual

fees expended or charged in connection with enforcing the stay and remedying the stay violation. Appellee must prove how much she expended or was charged in attorney's fees as a measure of her actual damages, but the statute does not require that she prove her damages were "reasonable."

### E.     Emotional Distress Damages

Emotional distress damages are a part of the "actual damages" permitted under 11 U.S.C. § 362(k) for a willful violation of an automatic stay. *In re Dawson*, 390 F.3d 1139, 1146 (9th Cir. 2004).[3]  To recover damages for emotional distress under § 362(k), "an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Id.* at 1149.  Emotional harm may be proved by: (1) medical evidence; (2) non-experts, such as family members, friends, or coworkers; or (3) "even without corroborative evidence" where "significant emotional distress [is] readily apparent." *Id.* at 1149–50.  The last category includes cases where the violator's conduct is "egregious," or where the conduct is not egregious but the circumstances "make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1150.[4] "Fleeting or trivial anxiety or distress does not suffice . . . ." *Id.* at 1149.

---

[3] The *In re Dawson* court refers to § 362(h), as do the parties in this case in some instances, but in 2005 Congress redesignated the damages provision as subsection (k) without substantive amendment. *See* Pub. L. 109-8, § 305(1)(B), 19 Stat. 23, 79 (2005).  The current statute reads: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (2006).

[4] The Ninth Circuit gave an example of egregious conduct as a case where a creditor entered the debtor's home at night, turned out the lights, and pretended to hold a gun to the debtor's head, *see id.*, and gave an example of non-egregious but sufficiently harmful conduct under the "reasonable person" test as a case where a debtor was forced to cancel her son's birthday party because her checking account had been briefly frozen. *See id.* (citing *In re Flynn*, 185 B.R. 89, 93 (S.D. Ga. 1995)).  The latter case supported emotional harm damages of $5000. *See id.*

Appellant appeals the award of $40,000 in emotional distress damages based on the Bankruptcy Court's failure to find that the emotional distress suffered by Appellee would have been suffered by a reasonable person similarly situated.  However, because of the disjunctive nature of the *In re Dawson* test, no such finding was required, *see Sternberg*, 595 F.3d at 943 n.1, though it was implicitly made in any case.  As noted, *supra*, the Ninth Circuit recognizes three ways to establish emotional distress damages under § 362(k):  medical evidence, corroboration by non-experts, and readily apparent emotional distress even without corroborative evidence. *Id.* at 1149–50.  The "reasonable person" standard represents only one-half of one of the three disjunctive methods by which one may prove emotional distress damages.  If the conduct is "egregious," the "reasonable person" test need not be met. *See id.* at 1150.

Here, the bankruptcy judge made her opinion of Appellant's conduct in selling the Property known at the hearing:

> I find the conduct of the bank absolutely deplorable.
>
> . . . .
>
> There is no excuse whatsoever.  There is a callous disregard, callous disregard, of the rights of these debtors.
>
> . . . .
>
> And worse, worse, when the issue was brought to your attention, you do nothing.  You stand there and pretend that nothing had happened.  You let the debtors suffer for seven months while you stand there and do absolutely nothing.

(App. to Opening Br., Ex. 20, at 151:9–152:2, ECF No. 15.)  This language is easily sufficient to support a finding of egregious conduct by Appellant, and the bankruptcy judge's findings of fact with respect to the conduct of Appellant was not clear error. Selling a mortgagor's house without a default can constitute egregious conduct.  Such

conduct in fact defines the tort of wrongful foreclosure in this state (and others). *See Collins v. Union Fed. Sav. & Loan Assn.*, 662 P.2d 610, 623 (Nev. 1983) ("An action for the tort of wrongful foreclosure will lie if . . . at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed . . . ." (citing *Munger v. Moore*, 89 Cal. Rptr. 323 (Ct. App. 1970); *Spires v. Lawless,* 493 S.W.2d 65 (Mo. Ct. App. 1973); *League City State Bank v. Mares,* 427 S.W.2d 336 (Tex. Civ. App. 1968))). Therefore, the Court finds that under the first half of the third disjunctive prong of the *In re Dawson* test, emotional distress damages were warranted.

Moreover, a reasonable person whose home is sold without being in default would suffer significant emotional distress, so emotional distress damages are warranted under the second half of the third disjunctive prong of the *In re Dawson* test, as well. It does not matter that the Bankruptcy Court did not explicitly state such a finding. The bankruptcy judge implicitly made such a finding when she derided the behavior of Appellant, and even if she had not, the Court could rule directly on the question on appeal and find that a reasonable person would suffer emotional distress if her home were foreclosed and sold, and she were threatened with immediate eviction within three days, when she was not in default. Furthermore, emotional distress damages were warranted under the first and second disjunctive prongs of the *In re Dawson* test. Appellee testified as to her medial problems after the incident, such as her increased need for Xanax and her new prescription for Ativan. She also testified that the wrongful foreclosure caused this distress. Appellee's husband corroborated her emotional distress.

In summary, the Bankruptcy Court made no error of law in awarding emotional distress damages. These damages were available in this case under any of the three prongs of *In re Dawson*. Nor did the Bankruptcy Court commit clear error in making any of the factual findings supporting emotional distress damages. The Court affirms this

award.

## **CONCLUSION**

IT IS HEREBY ORDERED that the Bankruptcy Court's Order is AFFIRMED in part, and REVERSED and REMANDED in part. All aspects of the Order are affirmed except for the award of attorney's fees, which is reversed and remanded for a determination of "actual damages" under § 362(k). Alternatively, the Bankruptcy Court could impose attorney's fees under Rule 9011 if it follows the requirements of that rule.

DATED this 14th day of September, 2010.

_____
Gloria M. Navarro
United States District Judge